UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ADMI INC., *et al.*,

                                    *Plaintiffs*,

        v.                                                    No. 24-CV-859 (KMK)

JOSEPH R. CELLURA, EMELIA BAER                ORDER & OPINION
CELLURA, MALIBU 55 INC., *and*
DOES 1–3,

                                    *Defendants*.

Appearances:

Lawrence Richard Lonergan, Esq.
Annie Erin Causey, Esq.
James Francis Woods, Esq.
Woods Lonergan PLLC
New York, NY
*Counsel for Plaintiffs ADMI Inc., SIR Inc., Baynon International Corporation, and Michael F. Ghiselli*

Barak Lurie, Esq.
Lurie & Kramer
Los Angeles, CA
*Counsel for Plaintiffs Michael F. Ghiselli and Bruce Houle*

Richard M. Scherer, Jr., Esq.
Tessa Rae Scott, Esq.
Lippes Mathias LLP
Buffalo, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

        ADMI Inc. ("ADMI"), SIR, Inc. ("SIR"), Michael Ghiselli ("Ghiselli"), Bruce Houle

("Houle"), and Baynon International Corporation a/k/a Global Brands Capital Corporation

("GBCC") (collectively, "Plaintiffs") bring this Action against Joseph Cellura ("Cellura"),

Emilia Baer Cellura ("Baer"), Malibu 55 Inc. ("Malibu"), and three John Does (collectively, "Defendants") asserting various claims arising out of Defendants' allegedly fraudulent conduct. (*See generally* Am. Compl. (Dkt. No. 17).)  These claims include securities fraud, breach of contract, and fraudulent misrepresentation and inducement against Cellura; conspiracy to commit embezzlement and conversion against Cellura and Baer; and "prima facie tort," "equitable relief constructive trust," a demand for an accounting, and declaratory and injunctive relief against all Defendants.  (*See id.* ¶¶ 116–80.)  Before the Court is Defendants' Motion to Dismiss (the "Motion") pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3).[1]  (*See* Not. of Mot. (Dkt. No. 62).)  For the reasons discussed below, the Motion is granted.

I.  Background

A.  Factual Background

The following facts are drawn from the Amended Complaint and are assumed true for the purposes of resolving the instant Motion.  *See Roe v. St. John's Univ.*, 91 F.4th 643, 651 (2d Cir. 2024).

Malibu is a Nevada corporation with its principal place of business in Reno, Nevada. (Am. Compl. ¶ 29.)  Cellura, who died on June 22, 2025, (*see* Dkt. No. 93), was a resident of Nevada and president of Malibu, (Am. Compl. ¶¶ 27, 29).  Baer, Cellura's wife, is a resident of Nevada and the secretary and treasurer of Malibu.  (*Id.* ¶ 28, 69.)  Ghiselli is a resident of California.  (*Id.* ¶ 24.)  Houle is a resident of Florida.  (*Id.* ¶ 23.)  GBCC is a Nevada LLC and ADMI and SIR are Nevada corporations, all with their principal place of business at 570 County Route 49, Middletown, New York.  (*Id.*  ¶¶ 21, 25, 26.)  The Court notes that the GBCC, ADMI,

_____

[1] Defendants also move, as an alternative to dismissal, for transfer of venue pursuant to 28 U.S.C. § 1404.

and SIR's principal place of business address is the same as that of attorney Douglas Dollinger, who the Court disqualified from representing Empire Trust, LLC, ("Empire Trust") and Houle in October 2024.  (*See* Dkt. No. 77.)

Beginning in January 2020, Cellura and Ghiselli conducted preliminary negotiations with Authentic Brands Group ("ABG"), a brand management company headquartered in New York City, "to develop a license agreement in the hospitality industry" using the Sports Illustrated brand (the "SI License").  (*Id.* ¶ 38.)  In March 2020, Cellura and Ghiselli "agreed to share the ideas and any license they could negotiate with ABG" and that Cellura would develop a property in Hawaii, while Ghiselli would do the same in Alabama.  (*Id.* ¶¶ 40–41.)  That month, Ghiselli entered into a stock purchase agreement with the majority of GBCC shareholders "to use the company for development of [the] projects."  (*Id.* ¶ 39.)  GBCC's board of directors created a new class of stock, "Super Majority Nondilutive Preferred Series A Share[s]" ("A-Shares"), 49.8% of which is held by Empire Trust, Houle, and Ghiselli, and 34.3% of which is held by Cellura.  (*Id.* ¶¶ 42–43.)  On April 29, 2020, holders of A-Shares entered into a Voting Trust Agreement ("VTA") that granted their voting rights to Cellura as Trustee for one year.  (*Id.* ¶¶ 44–45.)  The VTA "was entered into for the purpose of allowing [Cellura] to create sub-companies under [GBCC]" without prior approval from the GBCC board of directors or A-Shares majority shareholders.  (*Id.* ¶ 46.)  ADMI and SIR are two of these sub-companies.  (*Id.* ¶ 47.)  The VTA contains a Nevada choice-of-law clause.  (*See* VTA (Dkt. No. 17-3) § 12.)

Initial negotiations for the SI License were between ABG and GBCC, but upon ADMI's creation, Cellura began using ADMI "as the trust-to-trust vehicle for the purchase of the [Sports Illustrated license]."  (Am. Compl. ¶ 52.)  Cellura directed Houle to explain to ABG Executive Vice President of Business Development Richie Goldberg that "ADMI would be substituted for

GBCC" and hold the SI License.  (*Id.* ¶ 53.)  On April 26, 2021, "[Cellura] and GBCC's New York agent for the purchase of the [SI License], Max Schapiro[,] substituted ADMI for GBCC." (*Id.* ¶ 55.)  On June 1, 2021, ADMI entered into a royalty licensing agreement with ABG for the Sports Illustrated brand (the "SI License Agreement").  (*Id.* ¶ 56.)  The agreement provided that ownership of the SI License would be split between ADMI at 80% and another company, Experiential Ventures Hospitality ("EVH"), at 20%.  (*Id.*)  In May 2022, ownership of the license changed to 50% each between ADMI and EVH "upon a staggered payment."  (*Id.* ¶ 57.)

In January 2023, with the consent of the parties to the VTA, Cellura sold 50% of ADMI's interest in the SI License to Kituwah LLC for 10 million dollars (the "Kituwah Agreement"), seven million dollars of which was paid at the time of the sale and intended for payment to the parties to the VTA and to service ADMI debts and invoices.  (*Id.* ¶¶ 62, 65.)  The Kituwah Agreement also placed the SI License in a holding company, Sports Hospitality Ventures ("SHV"), with ownership in SHV split between Kituwah, EVH, ADMI, and ABG.  (*Id.* ¶ 64.) On January 30, 2023, pursuant to the Kituwah Agreement, SHV paid ADMI $516,000 in fees. (*Id.* ¶ 66.)  On January 31, 2023, Cellura withdrew from an ADMI bank account the seven million dollars from Kituwah and the $516,000 from SHV and deposited the funds into a Malibu bank account.  (*Id.* ¶¶ 65, 66.)

On February 9, 2023, "due demand for an accounting and return of these payments was made of both [Cellura] and [Baer]," but "[e]ach has refused to return or account for the funds." (*Id.* ¶ 67.)  On April 12, 2023, Cellura used $2,490,000 from Malibu's bank account to buy a home in the name of Malibu and which he occupied with Baer. (*Id.* ¶¶ 67–68.)  Cellura was hospitalized from at least early March 2023 through the end of May 2023, during which his condition was "life and death."  (*Id.* ¶ 69.)  On May 11, 2023, Cellura resigned from all positions

in ADMI and SIR, appointed Ghiselli CEO of ADMI and chairman of ADMI and SIR, and "agreed to account and turnover the ADMI funds." (*Id.* ¶¶ 76–77.)  On May 16, 2023, Cellura appointed Tim Wilbanks CEO of SIR.  (*Id.* ¶¶ 78–79.)

In June 2023, Cellura and his agent, Max Schapiro, negotiated a loan of six million dollars from Travel and Leisure Co. ("T&L") to ADMI in connection with Alabama land under SIR's control.  (*Id.* ¶¶ 80–81.)  SIR quitclaimed the property to ADMI "believing the transfer was part of the proposed partnership deal with T&L."  (*Id.* ¶ 82.)  The loan was deposited directly into Mailbu's account.  (*Id.* ¶ 83.)  Plaintiffs allege that Cellura also received a $4,551,00 royalty advance from T&L to Malibu's bank account.  (*Id.*¶ 90.)

Since August 2023, Plaintiffs have made multiple attempts to recover funds allegedly diverted by Cellura.  (*See id.* ¶ 95.)  Plaintiffs allege that business opportunities have stalled or may be lost due to Plaintiffs' inability to finance their operations.  (*See id.* ¶¶ 96, 111–12.)

B.  Procedural Background

Plaintiffs commenced the instant Action on February 6, 2024.  (Compl. (Dkt. No. 6).)  On March 19, 2024, Plaintiffs filed their Amended Complaint along with a Motion for a Temporary Restraining Order ("TRO").  (Dkt. Nos. 10, 12.)  On March 21, 2024, the Court denied the TRO for failing to satisfy the requirements of Rule 65(b) and not complying with Local Rule 6.1(b). (*See* Dkt. No. 14.)

On August 16, 2024, Defendants filed the instant Motion.  (*See* Not. of Mot.; Defs' Mem. in Supp. of Mot. ("Defs' Mem.") (Dkt. No. 63).)  On September 9, 2024, Plaintiffs filed their response.  (*See* Pls' Mem. in Opp. to Mot. ("Pls' Opp.") (Dkt. No. 71).)  On October 17, 2024, Defendants filed their reply.  (*See* Defs' Reply Mem. in Supp. of Mot. (Dkt. No. 76).)  On October 24, 2024, the Court granted Defendants' Motion to Disqualify Douglas Dollinger as

counsel for Empire Trust and Houle.  (*See* Dkt. No. 77.)  On November 14, 2024, the Court granted Empire Trust's voluntary dismissal.  (*See* Dkt. No. 81.)  On June 24, 2025, Defendants provided notice that Cellura died on June 22, 2025.  (Dkt. No. 93.)

## II.  Discussion

A.  Standard of Review

### 1.  Rule 12(b)(2)

On a Rule 12(b)(2) motion, the plaintiff has the burden of establishing that the court has jurisdiction over the defendant.  *See In re Magnetic Audiotape Antitrust Litig.,* 334 F.3d 204, 206 (2d Cir. 2003) (per curiam); *see also Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*, 667 F. Supp. 3d 83, 116 (S.D.N.Y. 2023) (same).  However, "prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith legally sufficient allegations of jurisdiction, i.e., by making a prima facie showing of jurisdiction." *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998) (alteration adopted) (italics, citation, and quotation marks omitted); *see also Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008) ("Where . . . a district court relies on the pleadings and affidavits, and chooses not to conduct a full-blown evidentiary hearing, plaintiffs need only make a prima facie showing of personal jurisdiction over the defendant." (citation and quotation marks omitted)).  "[A] prima facie showing of jurisdiction does not mean that [the] plaintiff must show only some evidence that [the] defendant is subject to jurisdiction; it means that [the] plaintiff must plead facts which, if true, are sufficient in themselves to establish jurisdiction." *Bellepointe, Inc. v. Kohl's Dep't Stores, Inc.*, 975 F. Supp. 562, 564 (S.D.N.Y. 1997); *see also Royall v. City of Beacon*, No. 24-CV-3, 2024 WL 4266546, at *5 (S.D.N.Y. Sept. 23, 2024) (same).  A plaintiff may "make this showing through [her] own affidavits and supporting

materials, containing an averment of facts that, if credited . . ., would suffice to establish jurisdiction over the defendant." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (alteration, citations, and quotation marks omitted); *see also Mayor v. Sankareh*, No. 21-CV-10831, 2023 WL 2393919, at *2 (S.D.N.Y. Feb. 7, 2023) (same), *report and recommendation adopted*, 2023 WL 2207602 (S.D.N.Y. Feb. 24, 2023).

Although a court must credit a plaintiff's allegations in support of jurisdiction and "construe the pleadings and any supporting materials in the light most favorable to the plaintiff[,]" a court may also consider materials beyond the pleadings in connection with a Rule 12(b)(2) motion. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013) (citing *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)); *see also SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 167 (S.D.N.Y. 2015) ("[A] court may consider documents beyond the pleadings in determining whether personal jurisdiction exists." (quoting *Greatship (India) Ltd. v. Marine Logistics Sols. (Marsol) LLC*, No. 11-CV-420, 2012 WL 204102, at *2 (S.D.N.Y. Jan. 24, 2012))). "Pleadings that assert only 'conclusory non-fact-specific jurisdictional allegations' or state a 'legal conclusion couched as a factual allegation' do not meet [a plaintiff's] burden" of establishing personal jurisdiction over a defendant. *Pruthi v. Empire City Casino*, No. 18-CV-10290, 2022 WL 596370, at *2 (S.D.N.Y. Feb. 28, 2022) (quoting *Jazini*, 148 F.3d at 185); *see also Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994) (explaining that a court cannot "draw 'argumentative inferences' in the plaintiff's favor" in considering Rule 12(b)(2) motion (quoting *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992))).

<u>2. Rule 12(b)(3)</u>

"On a motion to dismiss a complaint under Rule 12(b)(3) for improper venue, 'the plaintiff bears the burden of establishing that venue is proper.'" *Ne. Landscape & Masonry Assocs., Inc. v. State of Conn. Dep't of Labor*, No. 14-CV-9104, 2015 WL 8492755, at *2 (S.D.N.Y. Dec. 10, 2015) (quoting *Fedele v. Harris*, 18 F. Supp. 3d 309, 316 (E.D.N.Y. 2014)). In analyzing a claim of improper venue, a court must view all facts in the light most favorable to the plaintiff. *See Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007). Thus, a "[c]ourt must accept the facts alleged in the complaint and construe all reasonable inferences in the plaintiff's favor." *Ne. Landscape*, 2015 WL 8492755, at *2 (alteration in original) (citation omitted).

The permissible venue in this Action is determined by the general venue provision for cases. *See* 28 U.S.C. § 1391(b). Under that statute, venue can be laid "in either (1) the district of the defendant's residence; (2) the district where a substantial part of the events giving rise to the claim occurred; or (3) if neither of those can be applied, any district where a defendant is subject to personal jurisdiction." *Ne. Landscape*, 2015 WL 8492755, at *2 (citation omitted). Importantly, the Second Circuit has said that courts "are required to construe the venue statute strictly." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005) (citing *Olberding v. Ill. Cent. R.R.*, 346 U.S. 338, 340 (1953)).

"When considering a motion to dismiss for improper venue under Rule 12(b)(3), 'the plaintiff need only make a prima facie showing of venue.'" *Dash v. Bank of Am. Corp.*, No. 18-CV-4807, 2019 WL 1780140, at *4 (S.D.N.Y. Apr. 23, 2019) (italics omitted) (quoting *Gulf Ins. Co.*, 417 F.3d at 355). "When venue is improper, [a] [c]ourt 'shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been

brought.'" *Fedele*, 18 F. Supp. 3d at 319 (quoting 28 U.S.C. § 1406(a)); *see also Daniel v. Am. Bd. of Emergency Med.,* 428 F.3d 408, 435 (2d Cir. 2005) (noting that a court must decide whether to "simply affirm dismissal on these [improper venue] grounds or, in the interest of justice, order transfer of the action to another district where jurisdiction and venue properly obtain").

Even where venue is proper, a court may, "[f]or the convenience of parties and witnesses, in the interest of justice, . . . transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). In determining whether to transfer, courts should first inquire "whether the action could have been brought in the proposed transferee forum." *Solar v. Annetts*, 707 F. Supp. 2d 437, 442 (S.D.N.Y. 2010) (citation omitted). Second, courts should determine "whether the transfer would promote the convenience of parties and witnesses and would be in the interests of justice." *Id.* (citation omitted). In making this determination, courts weigh the following factors:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties."

*Lehrer v. J&M Monitoring, Inc.*, No. 20-CV-6956, 2022 WL 2392441, at *3 (S.D.N.Y. July 1, 2022) (quoting *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010)).

B.  Analysis

Defendants argue that the Court lacks personal jurisdiction over them, (*see* Defs' Mem. 5–11), that venue is improper, (*see id.* 11–15), and that the Court may, if it is so inclined, transfer the Action to Nevada, where venue is proper, (*see id.* 15–19).

9

1.  Personal Jurisdiction

"There are three requirements for the Court to exercise personal jurisdiction." *Johnson v. Stop & Shop Supermarket Co., LLC*, No. 22-CV-9691, 2024 WL 1217074, at *6 (S.D.N.Y. Mar. 21, 2024) (citing *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59–61 (2d Cir. 2012)).

> First, the plaintiff's service of process upon the defendant must have been procedurally proper.  Second, there must be a statutory basis for personal jurisdiction that renders such service of process effective.  Third, the exercise of personal jurisdiction must comport with constitutional due process principles.

*Id.* (quotation marks and citations omitted).  Here, the sufficiency of Plaintiffs' service of process on Defendants is not at issue.  "A federal court sitting in diversity looks to the law of the state in which it sits to ascertain whether it may exercise personal jurisdiction over a foreign defendant." *JihShyr Yih v. Taiwan Semiconductor Mfg. Co.*, No. 18-CV-3844, 2019 WL 2578306, at *4 (S.D.N.Y. June 24, 2019) (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002)), *aff'd sub nom. Yih v. Taiwan Semiconductor Mfg. Co.*, 815 F. App'x 571 (2d Cir. 2020).  Accordingly, the Court must analyze whether it has personal jurisdiction over Defendants "under a theory of either general jurisdiction pursuant to N.Y. C.P.L.R. § 301 [("Section 301")] or specific jurisdiction under N.Y. C.P.L.R. § 302 [("Section 302")]." *Id.*  If a court determines that neither Section 301 nor Section 302 is met, it need not consider whether constitutional due process is satisfied.  *See Johnson*, 2024 WL 1217074, at *6.

Defendants argue that the Court lacks general jurisdiction over them.  (Defs' Mem. 6–7.) Plaintiffs do not address this point in their brief, (*see generally* Pls' Opp.), and so concede the argument, *see Bradley v. Markel Serv., Inc.*, No. 22-CV-8928, 2023 WL 6199867, at *7 (S.D.N.Y. Sept. 22, 2023) ("[A] plaintiff effectively concedes a defendant's argument by [her] failure to respond to them." (quoting *Felske v. Hirschmann*, No. 10-CV-8899, 2012 WL 716632,

at *3 (S.D.N.Y. Mar. 1, 2012))); *Lopez Canas v. Whitaker*, No. 19-CV-6031, 2019 WL 2287789,

at *5 (W.D.N.Y. May 29, 2019) ("It is well settled in this Circuit that a plaintiff effectively

concedes a defendant's arguments by his failure to respond to them" (alteration and quotation

marks omitted)).  Accordingly, the Court addresses only whether it has specific jurisdiction over

Defendants.

"N.Y. C.P.L.R. § 302(a) governs specific jurisdiction."  *Mirza v. Dolce Vida Med. Spa,*

*LLC*, No. 19-CV-6444, 2024 WL 307969, at *4 (S.D.N.Y. Jan. 26, 2024).  Section 302(a)

provides that:

> As to a cause of action arising from any of the acts enumerated in this section, a
> court may exercise personal jurisdiction over any non-domiciliary, or his executor
> or administrator, who in person or through an agent:
>> 1. transacts any business within the state or contracts anywhere to supply
>> goods or services in the state; or
>> 2. commits a tortious act within the state, except as to a cause of action for
>> defamation of character arising from the act; or
>> 3. commits a tortious act without the state causing injury to person or
>> property within the state, except as to a cause of action for defamation of
>> character arising from the act, if he
>>> (i) regularly does or solicits business, or engages in any other
>>> persistent course of conduct, or derives substantial revenue from
>>> goods used or consumed or services rendered, in the state, or
>>> (ii) expects or should reasonably expect the act to have
>>> consequences in the state and derives substantial revenue from
>>> interstate or international commerce; or
>> 4. owns, uses or possesses any real property situated within the state.

N.Y. C.P.L.R. § 302(a).  "Section 302 'is a single act statute' and proof of one transaction in

New York is sufficient to invoke jurisdiction, even though the defendant never enters New York,

so long as the defendant's activities here were purposeful and there is a substantial relationship

between the transaction and the claim asserted."  *Am. Girl, LLC v. Zembrka*, 118 F.4th 271, 277

(2d Cir. 2024), *cert. denied*, No. 24-653 (Jan. 21, 2025) (quoting *Chloé*, 616 F.3d at 170).  It

should be noted, however, that "jurisdiction cannot be based on conduct that is 'extraneous or

coincidental.'"  *World Assoc. of Icehockey Players Unions N. Am. Div. v. Nat'l Hockey League*,

No. 24-CV-1066, 2024 WL 4893266, at *11 (S.D.N.Y. Nov. 26, 2024) (quoting *Spetner v. Pal.*

*Inv. Bank*, 70 F.4th 632, 640 (2d Cir. 2023)).  The Parties discuss only Sections 302(a)(1) and

302(a)(2).  (*See* Defs' Mem. 7–11; Pls' Opp. 12, 15.)

   a.  Section 302(a)(1)

   "To determine the existence of jurisdiction under Section 302(a)(1), a court must decide

(1) whether the defendant transacts any business in New York and, if so, (2) whether this cause

of action arises from such a business transaction."  *Johnson*, 2024 WL 1217074, at *7 (first

alteration omitted, second alteration adopted) (quoting *Best Van Lines, Inc. v. Walker*, 490 F.3d

239, 246 (2d Cir. 2007)).

   As for the first prong, "[t]ransacting business under [Section] 302(a)(1) means

'purposeful activity—some activity by which the defendant purposefully avails itself of the

privilege of conducting activities within the forum State, thus invoking the benefits and

protections of its laws.'"  *Am. Girl*, 118 F.4th at 277 (quoting *Spetner*, 70 F.4th at 639).  Courts

consider several factors in determining whether an out-of-state defendant transacts business in

New York under Section 302(a)(1), including:

> (i) whether the defendant has an on-going contractual relationship with a New York
> corporation; (ii) whether the contract was negotiated or executed in New York, and
> whether, after executing a contract with a New York business, the defendant has
> visited New York for the purpose of meeting with parties to the contract regarding
> the relationship; (iii) what the choice-of-law clause is in any such contract; (iv)
> whether the contract requires [parties to that contract] to send notices and payments
> to the forum state or subjects them to supervision by the corporation in the forum
> state.

*Trisura Ins. Co. v. Bighorn Constr. & Reclamation, LLC*, No. 23-CV-11053, 2025 WL 1531676,

at *7 (S.D.N.Y. May 28, 2025) (quoting *Sunward Elecs, Inc. v. McDonald*, 362 F.3d 17, 22 (2d

Cir. 2004)).  These factors are relevant, but no one factor is dispositive and other factors may be

considered, as the "ultimate determination is based on the totality of circumstances." *Sunward Elecs.*, 362 F.3d at 23 (citation omitted).

> The second prong
>
> asks whether the cause of action "aris[es] from that business transaction or transactions." New York courts have held that a claim "aris[es] from" a particular transaction when there is "some articulable nexus between the business transacted and the cause of action sued upon," or when "there is a substantial relationship between the transaction and the claim asserted."

*Trisura Ins. Co.*, 2025 WL 1531676, at *8 (quoting *Best Van Lines*, 490 F.3d at 249). "This [prong] is satisfied where 'at least one element of the claim arises from defendant's New York contacts.'" *World Ass'n of Icehockey Players*, 2024 WL 4893266, at *11 (quoting *Spetner*, 70 F.4th at 643). "[T]here must be 'a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former.'" *Lively v. Wayfarer Studios LLC*, No. 24-CV-10049, 2025 WL 1952027, at *15 (S.D.N.Y. July 16, 2025) (quoting *D & R Glob. Selections, S.L. v. Bodega Olegario Falcon Pineiro*, 78 N.E.3d 1172, 1176 (N.Y. 2017)). "Where this necessary relatedness is lacking, [courts] have characterized the claim as 'too attenuated' from the transaction, or 'merely coincidental' with it." *Sigma Lithium Corp. v. Gardner*, No. 23-CV-7403, 2025 WL 1268311, at *3 (S.D.N.Y. May 1, 2025) (quoting *Licci v. Lebanese Canadian Bank*, 984 N.E.2d 893, 901 (N.Y. 2012)). "There is 'no bright-line test for determining whether the "nexus" is present in a particular case[;]' [r]ather, the 'inquiry is a fact-specific one[.]'" *Chalfin v. Go Big Solar, LLC*, No. 24-CV-4768, 2025 WL 2022012, at *9 (S.D.N.Y. July 17, 2025) (quoting *Licci*, 673 F.3d at 67). "Although the [second prong] inquiry under the statute is relatively permissive, and causation is not required, not every conceivable connection to a New York transaction is substantial enough to confer jurisdiction." *Giana v. Shein Distrib. Corp.*, No. 24-CV-2599, 2024 WL 4362749, at *2 (S.D.N.Y. Oct. 1, 2024) (quoting *Daou v. BLC Bank, S.A.L.*, 42 F.4th 120, 129 (2d Cir. 2022)).

13

<u>i.  Transacting Business in New York</u>

The first prong is met, as Defendants concede that "the Amended Complaint alleges that Cellura transacts business in New York," (Defs' Mem. 8), and Plaintiffs, naturally, agree that the first prong is met by Cellura's executing the SI License Agreement on behalf of ADMI.  (Pls' Opp. 11.)

Plaintiffs also argue that Cellura's "commenc[ing] [another] litigation in New York, involving the [SI License]" constitutes his "availing himself and his fellow plaintiffs of New York courts in the [other] action."  (*Id.*)  "District courts in the Second Circuit have concluded that 'a party's appearance as petitioner in one proceeding does not necessarily subject it to personal jurisdiction in another matter, even in the same court.'"  *V&A Collection, LLC v. Guzzini Props., Ltd.*, No. 20-CV-1797, 2021 WL 982461, at *6 (S.D.N.Y. Mar. 15, 2021) (quoting *Gulf Ins. Co. v. Caldor Corp.*, No. 03-CV-2894, 2006 WL 1586571, at *3 (S.D.N.Y. June 9, 2006)), *aff'd*, 46 F.4th 127 (2d Cir. 2022); *see also Doe 1 v. Gov't of United States Virgin Islands*, 771 F. Supp. 3d 379, 395 (S.D.N.Y. 2025) (finding that the Second Circuit has not endorsed the "consent" theory that permits the exercise of personal jurisdiction over a party that is subject to a lawsuit that arises from the same transaction "as another lawsuit brought in the same district by the party challenging jurisdiction"); *but see S.E.C. v. Softpoint, Inc.*, No. 95-CV-2951, 2012 WL 1681167, at *3 (S.D.N.Y. May 9, 2012) ("Quite simply, Cosby transacted business in New York when he litigated the case that resulted in the judgment the SEC now seeks to enforce.").  Here, Cellura is one of the plaintiffs in the other lawsuit (the "Cellura-Moyer Action").  *See* Complaint at 1, *ADMI, Inc. v. Moyer*, No. 22-CV-9339 (S.D.N.Y. Sept. 11, 2023) (Dkt. No. 5).  The Cellura-Moyer Action is ongoing and has not resulted in any judgment or dispositive holding.  (*See generally* Dkt. 22-CV-9339.)  Accordingly, the Court declines to

find that the existence of the Cellura-Moyer Action permits it to exercise specific jurisdiction over Cellura because the "consent" theory is not endorsed by the Second Circuit, *see Doe 1*, 771 F. Supp. 3d at 395, and because the instant Action is not akin to those limited circumstances in which courts have exercised jurisdiction under the "consent" theory, *see Austin Env't Corp. v. Margarita Express, LLC*, No. 21-CV-4385, 2022 WL 1443356, at *7 (S.D.N.Y. May 06, 2022) (noting that the exercise of jurisdiction where the "act of litigating in New York is sufficient to confer jurisdiction over subsequent, related actions" usually concerns the enforcement of a judgment).

Plaintiffs also argue that it is "unequivocally established [that] ADMI Inc. [is] . . . a foreign business entity headquartered in New York." (Pls' Opp. 11.) Plaintiffs refer to the Amended Complaint, which alleges that ADMI is a Nevada corporation with its principal place of business in Middletown, New York, (Am. Compl. ¶ 25), and Ghiselli's affidavit, in which he points to the complaint in the Cellura-Moyer Action, (*see* Aff. of Michael Ghiselli ("Ghiselli Aff.") (Dkt. No. 70) ¶¶ 20–25). While the Court may take judicial notice of the existence of the complaint in the Cellura-Moyer Action, it cannot do so for the truth of the matters asserted. *See Gonzalez v. Sutton Park Ctr. for Nursing & Rehab.*, No. 23-CV-8788, 2025 WL 920607, at *2 (S.D.N.Y. Mar. 26, 2025) (citing, inter alia, *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)). The Court struggles to understand Plaintiffs' argument here—how does ADMI's residence in New York establish a business transaction that permits the Court to exercise specific jurisdiction over Cellura? Plaintiffs offer no explanation. (*See generally* Pls' Opp.) The Court will not delve deeper into this cursory argument. *See Mercado v. Mount Sinai Beth Israel*, No. 21-CV-10467, 2023 WL 5975322, at *7 (S.D.N.Y. Sept. 14, 2023) ("Courts need not consider cursory arguments of this kind, and the Court declines to do so here." (quoting *Rodriguez v. Town of*

*Ramapo*, 412 F. Supp. 3d 412, 432 n.17 (S.D.N.Y. 2019))); *Allstate Vehicle & Prop. Ins. Co. v. Mars*, 533 F. Supp. 3d 71, 82 (E.D.N.Y. 2021) (declining to consider an unsupported, cursory argument).

<u>ii.  Causes of Action Arising from the Business Transaction</u>

As for the second prong, Defendants argue that "the alleged conduct [does not] pertain to the dispute at issue or the allegations against Cellura."  (Defs' Mem. 8.)  Plaintiffs respond that there is a "substantial relationship" between the transaction, i.e., the Sports Illustrated License Agreement and the funds received under the SI License, and the asserted claims, i.e., "Cellura's tortious conduct," because "Cellura . . . misdirected the funds from this New York-centric transaction for [Defendants'] benefit."  (Pls' Opp. 11.)  At bottom, Plaintiffs allege that Cellura executed an agreement in New York on behalf of ADMI, that Cellura then raised funds for certain hospitality projects, both with and without the consent of parties to the VTA, and that Cellura allegedly misappropriated those funds.  To simplify further, Plaintiffs and Cellura purchased an asset in New York that Cellura allegedly used outside of New York in a manner that defrauded Plaintiffs of funds that were also outside of New York.  The Court finds that this series of inferences is too attenuated to establish an articulable nexus or substantial relationship between the Sports Illustrated License Agreement and the causes of action in this case.  *See Sigma Lithium Corp.*, 2025 WL 1268311, at *6 (finding that the connection between transaction and cause of action too attenuated to establish specific personal jurisdiction under Section 302(a)(1)); *cf. Tam v. MIH CP Sols., LLC*, No. 21-CV-2148, 2022 WL 17415088, at *4 (E.D.N.Y. Dec. 5, 2022) (claims for conversion and unjust enrichment did not arise from defendant's business transactions where plaintiffs did not allege defendant "undertook activity in New York to convert plaintiffs' property or unjustly enrich himself," despite the exchange of

funds through a New York account).  The connection between New York and the causes of

action is "merely coincidental"— "the management, misappropriation, and misrepresentation [of

the funds at issue] are not alleged to have taken place in New York"—rather, "only by the

gossamer thread of [ABG] being located" in New York is there any conceivable connection to

New York.  *Advanced Plus LLC v. Jordan*, No. 24-CV-8881, 2025 WL 1158089, at *5

(E.D.N.Y. Apr. 21, 2025).  In short, Section 301(a)(1)'s nexus requirement is not met because

the initial licensing of the Sports Illustrated brand "could have been made anywhere and it would

not have changed the nature of the [P]laintiffs' allegations." *Id.* (quoting *DirecTV Latin Am.,*

*LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 424 (S.D.N.Y. 2010)).

\*      \*      \*

Defendants also argue that Plaintiffs have failed to allege that Malibu or Baer transacted

any business in New York.  (*See* Defs' Mem. 7–8.)  Plaintiffs argue that the Court may exercise

specific jurisdiction because Malibu and Baer used Cellura as an agent, that Malibu and Baer

"were alter egos of Cellura," or that Cellura, Malibu, and Baer were co-conspirators.  (Pls' Opp.

15.)

With respect to the agency argument, "[a] non-domiciliary may be subject to personal

jurisdiction under C.P.L.R. § 302(a)(1) where an agent under its control 'transacted any business

within the State.'"  *Saks v. Andreu, Palma, Lavin, & Solis, PLLC*, No. 24-CV-2045, 2025 WL

317516, at *4 (E.D.N.Y. Jan. 28, 2025) (quoting *New Media Holding Co. LLC v. Kagalovsky*,

949 N.Y.S.2d 22, 24 (N.Y. App. Div. 2012)).  To establish an agency relationship for

jurisdictional purposes, a plaintiff must show that the alleged agent acted "for the benefit of, with

the knowledge and consent of, or under some control by, the nonresident principal," when taking

the actions which establish personal jurisdiction.  *Miami Prods. & Chem. Co. v. Olin Corp.*, 449

F. Supp. 3d 136, 180 (W.D.N.Y. 2020) (quoting *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 85 (2d Cir. 2018)).  The Amended Complaint is devoid of any factual allegations that establish Malibu and/or Baer's control over Cellura and Plaintiffs fail to make any such argument in their brief.  (*See generally* Am. Compl.; Pls' Opp.)  Because Plaintiffs have "not alleged any facts or provided any evidence" suggesting that Malibu or Baer controlled Cellura, they have not established that Malibu or Baer can be subject to personal jurisdiction on the basis that Cellura was their agent.  *Raspberry Holdings LLC v. NextBank Int'l Inc.*, No. 24-CV-1529, 2025 WL 438270, at *6 (S.D.N.Y. Feb. 7, 2025) (finding the agency theory inapplicable because of a lack of sufficient factual allegations); *see also Bloomfield v. Alvest (USA), Inc.*, No. 23-CV-5090, 2025 WL 888476, at *6 (E.D.N.Y. Mar. 21, 2025) (finding that the agency theory did not establish specific jurisdiction where the plaintiff "ha[d] not sufficiently alleged that [the putative principal] controlled the actions of [the putative agents] to establish they were agents of [the putative principal].");* Saks*, 2025 WL 317516, at *4 (finding that the agency theory did not establish specific jurisdiction where the "allegations [were] insufficient to show that [the defendant], 'through an agent,' transacted 'any business within' New York" (citation omitted)).

With respect to the alter ego argument,

> "[w]hen determining whether personal jurisdiction exists over an entity alleged to be an alter ego, courts apply a less onerous standard than that necessary to pierce the corporate veil for liability purposes under New York law.  Specifically, a plaintiff must establish only that one entity was a shell for the other, i.e., that one entity was subject to the 'complete domination' of the other."

*Donnelly v. Anand*, No. 21-CV-9562, 2022 WL 4385901, at *7 (S.D.N.Y. Sept. 22, 2022) (quoting *Bank of Am. v. Apollo Enter. Sols., LLC*, 2010 WL 4323273, at *4 (S.D.N.Y. Nov. 1, 2010)).  The Amended Complaint contains no allegations that Cellura was subject to the "complete domination" of Malibu or Baer.  (*See generally* Am. Compl.)  Rather, Plaintiffs make only bare allegations vaguely pointing at the elements of a conspiracy.  (*See id.* ¶¶ 156–64.)

Accordingly, this argument fails to establish specific jurisdiction. *See Bur-Tex Hosiery, Inc. v. World Tech Toys, Inc.*, No. 23-CV-3454, 2024 WL 989841, at *9 (S.D.N.Y. Mar. 7, 2024) (finding that the pleading "does not plead sufficient facts to establish an alter ego relationship"); *Long Side Ventures LLC v. Hempacco Co.*, No. 22-CV-8152, 2023 WL 6386888, at *7–10 (S.D.N.Y. Sept. 29, 2023) (finding no personal jurisdiction because complaint contained "purely conclusory allegations of alter-ego status" (citation omitted)); *Bank of Am.*, 2010 WL 4323273, at *5 (finding that plaintiff's "allegations fail to address most of the factors relevant to the determination of alter ego status and are insufficient to plead that Apollo was Moriah's alter ego");

With respect to the co-conspirator argument, "numerous district courts sitting in New York have held that Section 302(a)(1) . . . does not provide for co-conspirator jurisdiction." *Przewozman v. Charity*, No. 20-CV-6088, 2023 WL 2562537, at *16 (E.D.N.Y. Mar. 17, 2023) (collecting cases); *see also Lively*, 2025 WL 1952027, at *15 ("New York courts have never recognized a conspiracy-based theory of jurisdiction under [Section] 302(a)(1)."); *Doe 1*, 771 F. Supp. 3d at 390 (stating that the court "could not find a single New York state-court decision recognizing conspiracy jurisdiction under [Section] 302(a)(1)").

Accordingly, for the reasons discussed above, the Section 302(a)(1) does not confer jurisdiction over any Defendant.

### b.  Section 302(a)(2)

With respect to Section 302(a)(2), "a defendant's act or omission must have occurred within" New York, *Edwardo v. Roman Catholic Bishop*, 579 F. Supp. 3d 456, 468 (S.D.N.Y. 2022), and it "may extend to out-of-state individuals who did not themselves commit a tort in New York, but 'who can be deemed responsible for such a tort based upon theories of agency or

conspiracy,'" *id.* at 469 (quoting *LaChappelle v. Torres*, 1 F. Supp. 3d 163, 169 (S.D.N.Y. 2014)).  Under a conspiracy theory, "a plaintiff must make a prima facie showing of conspiracy and allege specific facts warranting the inference that the defendants were members of the conspiracy."  *Meehan v. VIPKid*, No. 20-CV-6370, 2023 WL 7001363, at *15 (E.D.N.Y. Aug. 29, 2023) (italics omitted) (quoting *LaChapelle*, 1 F. Supp. 3d at 169), *report and recommendation adopted*, 2024 WL 277846 (E.D.N.Y. Jan. 25, 2024).

> To establish conspiracy-based personal jurisdiction pursuant to New York's long arm statute, a plaintiff must—after making a prima facie showing of a conspiracy— plausibly allege that:  "(a) the defendant had an awareness of the effects in New York of its activity; (b) the activity of the co-conspirators in New York was to the benefit of the out-of-state conspirators; and (c) the co-conspirators acting in New York acted at the direction or under the control, or at the request of or on behalf of the out-of-state defendant."

*Berkshire Bank v. Lloyds Banking Grp. plc*, No. 20-CV-1987, 2022 WL 569819, at *3 (2d Cir. Feb. 25, 2022) (quoting *Lawati v. Montague Morgan Slade Ltd.*, 961 N.Y.S.2d 5, 7 (N.Y. App. Div. 2013)).

Defendants argue that the Court may exercise jurisdiction over Malibu and Baer pursuant to Section 302(a)(2) because they "are alleged co-conspirators in the commission of a tort in New York State through an agent."  (Pls' Opp. 15.)  Defendants offer no citations to the Amended Complaint in support of this argument.  (*See id.*)  As mentioned above, courts decline to entertain such cursory arguments.  *See Kumaran v. Northland Energy Trading, LLC*, No. 19-CV-8345, 2025 WL 1982945, at *18 (S.D.N.Y. July 9, 2025).  Even assuming that Plaintiffs had plausibly alleged all elements described above, and Plaintiffs have not because their "allegations are devoid of any suggestion that [Cellura] acted on behalf of, under the control of, or for the benefit of [Malibu and Baer]," *Biz2Credit, Inc. v. Kular*, No. 14-CV-8223, 2015 WL 2445076, at *8 (S.D.N.Y. May 21, 2015), they fail at the crucial hurdle of alleging a tort that occurred in New York, as required by Section 302(a)(2), *see Twin Hills Holdings, LLC v. Furling*, No. 21-

CV-3507, 2023 WL 2742303, at *6 (E.D.N.Y. Mar. 31, 2023) ("[F]ederal courts in New York have routinely found that they do not have jurisdiction under Section 302(a)(2) if there is no allegation that defendant was present in New York when committing the allegedly tortious act.").

Plaintiffs assert claims for securities fraud, Counts I and II, breach of contract, Count III, fraudulent misrepresentation and inducement, Count IV, conspiracy to commit embezzlement and conversion, Count V, and "prima facie tort," Count VI.[2] (*See generally* Am. Compl.) As for the securities fraud claims, Plaintiff alleges in a conclusory fashion that Cellura used telephone and Internet communications "multiple times" in furtherance of the fraud. (Am. Compl. ¶ 120.) In a similar vein, the claim for fraudulent misrepresentation and inducement relies on Cellura's statements. (*See id.* ¶ 142 ("Cellura[] knew and was aware by his statements . . . ."); *id.* ¶ 146 ("That by reason of Cellura's false statements[,] the VTA Plaintiffs were intentionally misled . . . .").) Allegations that Defendants corresponded with Plaintiffs and that the correspondence entered New York is not enough to establish jurisdiction under Section 302(a)(2), as Second Circuit precedent "require[s] the defendant to physically commit the tortious act within New York." *Helio Logistics, Inc. v. Mehta*, No. 22-CV-10047, 2023 WL 21887, at *7 (S.D.N.Y. Jan. 3, 2023); *see also Fox v. Boucher*, 794 F.2d 34, 37 (2d Cir. 1986) (holding that the district court had no jurisdiction under Section 302(a)(2) where defendant allegedly committed a tort during a telephone conversation from New Jersey). "It is well established in New York that 'telephone calls originating outside the state may not constitute tortious acts commit[ted] within the state' under N.Y. C.P.L.R. § 302(a)(2)." *Bergrin v. United States*, No. 19-CV-9681, 2022 WL 912280,

---

[2] Counts VI, VIII, and XI, for "equitable relief constructive trust," a demand for an accounting, and injunctive relief and declaratory judgment, respectively, are remedies, not causes of action.

at *11 (S.D.N.Y. Mar. 28, 2022) (quoting *Bank v. Green Bullion Fin. Servs., LLC*, 922 N.Y.S.2d 733, 735 (App. Div. 2011)); *see also Glob. Edge Design Inc. v. Michel*, No. 20-CV-9654, 2021 WL 1549990, at *2 (S.D.N.Y. Apr. 20, 2021) (noting that Section 302(a)(2) is interpreted narrowly and that "correspondence by a defendant into New York without more generally does not confer New York jurisdiction over the correspondent," and that correspondence "includes telephone calls, mailed letters, and emails").

As for the breach of contract claim, because Section 302(a)(2) only applies to tort claims, the provision simply does not apply. *See Paige v. Digital Bus. Networks All., Inc.*, No. 24-CV-3169, 2025 WL 753952, at *10 n.7 (S.D.N.Y. Mar. 10, 2025) ("'Breach of contract is not a tort for purposes of' Sections 302(a)(2) and 302(a)(3)" (quoting *Tan v. SMS Investment Grp., LLC*, No. 15-CV-3719, 2016 WL 1171605, at *11 (E.D.N.Y. Mar. 24, 2016))).

As for the conspiracy to commit embezzlement and conversion claim, Plaintiffs allege, in a conclusory fashion, that "[e]ach Defendant committed at least one overt act in New York, in furtherance of such conspiracy . . . ." (Am. Compl. ¶ 161.) "To establish personal jurisdiction on a conspiracy theory, Plaintiff[] must make a prima facie showing of conspiracy, allege specific facts warranting the inference that the defendant was a member of the conspiracy, and show that the defendant's co-conspirator committed a tort in New York." *Rosenfeld v. AC2T, Inc.*, No. 20-CV-4662, 2021 WL 4197176, at *2 (E.D.N.Y. Sept. 15, 2021) (citation omitted). "The bland assertion of conspiracy is insufficient to establish jurisdiction." *Id.* (citation omitted). This is clearly one such bland assertion which fails to establish Section 302(a)(2) jurisdiction. *Cf. P & L Dev., LLC v. Gerber Prods. Co.*, 715 F. Supp. 3d 435, 456 (E.D.N.Y. 2024) (finding that Section 302(a)(2) did not establish jurisdiction over conspiracy claim where "mere[] conclusory allegations that [defendant] was a participant in the conspiracy [were] insufficient to

establish jurisdiction"); *Bailon v. Pollen Presents*, No. 22-CV-6054, 2023 WL 5956141, at *7 (S.D.N.Y. Sept. 13, 2023) (finding that Section 302(a)(2) did not establish jurisdiction over conspiracy claim where the complaint was lacking in specific facts that established a conspiracy); *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 407 n.28 (S.D.N.Y. 2021) ("Absent entirely from the complaint is any allegation linking the Scott Group Defendants to Simon Le or to any other member of the OneCoin scheme that had any contact with New York or committed any acts in New York within the meaning of Section 302(a)(2).").

Accordingly, there is no jurisdiction over Defendants under Section 302(a)(2). *See Helio Logistics*, 2023 WL 21887, at *9 (finding Section 302(a)(2) did not apply because "[p]laintiff has failed to establish" "that each element of the torts on which such jurisdiction is based occurred in New York"); *RLP Ventures LLC v. All Hands Instruction NFP*, No. 18-CV- 3988, 2019 WL 1316030, at *4 (S.D.N.Y. Mar. 22, 2019) (finding Section 302(a)(2) did not apply "because no tort has been alleged to have occurred in New York state").

## 2.  Venue

Defendants argue that venue is improper and that the Action should be dismissed or transferred to the District of Nevada.  (*See* Defs' Mem. 11, 15.)  Plaintiffs do not directly address whether venue is proper and instead focus on arguing that the Court should not transfer the Action to Nevada.  (*See* Pls' Opp. 15–21.)  Plaintiffs have therefore conceded the argument that venue is improper.  *See Bradley*, 2023 WL 6199867, at *7.  In any case, "[b]ecause the Court has determined that it lacks both general and specific personal jurisdiction over Defendants, venue is not proper pursuant to 28 U.S.C. § 1391(b)(1)." *Machado v. Hershey Ent. & Resorts Co.*, No. 21-CV-6434, 2023 WL 1967531, at *6 (E.D.N.Y. Feb. 13, 2023) (quoting *Bartosiewicz v. Nelsen*, 564 F. Supp. 3d 287, 306 (W.D.N.Y. 2021)).

Because venue is not proper, "transfer pursuant to [Section] 1404(a) is not appropriate." *Wohlbach v. Ziady*, No. 17-CV-5790, 2018 WL 3611928, at \*3 n.5 (S.D.N.Y. July 27, 2018) (citing *Kelly-Brown v. Winfrey*, No. 11-CV-7875, 2013 WL 6574918, at \*1 (S.D.N.Y. Dec. 12, 2013)).  Instead, the Court must look to 28 U.S.C. § 1406(a), which provides that "'[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.'" *Bartosiewicz*, 564 F. Supp. 3d at 301.  The Second Circuit has noted that "[c]ourts enjoy considerable discretion in deciding whether to transfer a case in the interest of justice." *Daniel*, 428 F.3d at 435.  "The Court's discretion may be informed by 'the convenience of the parties, ease of access to sources of proof, and concerns of judicial economy,' as well as 'the ultimate goal of the expeditious and orderly adjudication of cases and controversies on their merits.'" *Perrone v. Catamount Ski Resort, LLC*, No. 19-CV-8054, 2020 WL 2538464, at \*6 (S.D.N.Y. May 19, 2020) (quoting *Nelson v. Wells Fargo Bank, N.A.*, No. 17-CV-4045, 2019 WL 2514229, at \*10 (S.D.N.Y. June 18, 2019)).

The Court finds that transfer to a proper venue is the appropriate course.  *See Abalu v. Soc'y of Hum. Res. Mgmt.*, No. 24-CV-5917, 2025 WL 1019199, at \*15 (S.D.N.Y. Apr. 4, 2025) ("In most cases of improper venue, the courts conclude that it is in the interest of justice to transfer to a proper forum rather than to dismiss the litigation." (quoting Charles Alan Wright & Arthur R. Miller, 14D Fed. Prac. & Proc. Juris. § 3827 (4th ed. 2024))).  "[G]iven that Defendants reside in the [District of Nevada] and have requested that the Court transfer this case to that jurisdiction, they would not be prejudiced by a transfer." *Perrone*, 2020 WL 2538464, at \*6 (citation omitted).  Further, "[t]here is no indication that [Plaintiffs'] claims were made in bad faith, and the principle of 'eliminat[ing] impediments to the timely disposition of cases'

indisputably favors transferring the case . . . ." *Abalu*, 2025 WL 1019199, at *15 (quoting *Minette v. Time Warner*, 997 F.2d 1023, 1027 (2d Cir. 1993)). Plaintiffs argue that transfer is not appropriate because Plaintiffs "have no contacts or claims proving operative facts with the state of Nevada" such that "they could not have brought their claims in that state." (Pls' Opp. 16.) Plaintiffs get this fundamental and basic proposition of federal practice backwards—it is Defendants' contacts, not that of Plaintiff, that inform whether venue and jurisdiction are proper. *See Shelbourne Glob. Sols., LLC v. Gutnicki LLP*, 658 F. Supp. 3d 104, 119 (E.D.N.Y. 2023) ("[P]ersonal jurisdiction depends on the defendant's contacts with the forum state at the time the lawsuit was filed." (quoting *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 52 (2d Cir. 1991))); *Saunders v. Ard*, No. 17-CV-598, 2017 WL 7360409, at *1 (W.D.N.Y. Oct. 20, 2017) ("[T]he inquiry into personal jurisdiction, as distinguished from subject matter jurisdiction, must focus on defendants' contacts with the forum and not plaintiffs' contacts." (quoting *Granville Gold Trust-Switz. v. Commissione Del Fallimento/Interchange Bank*, 928 F. Supp. 241, 244 (E.D.N.Y. 1996), *aff'd*, 111 F.3d 123 (2d Cir. 1997))), *report and recommendation adopted*, 2018 WL 692100 (W.D.N.Y. Feb. 1, 2018); 28 U.S.C. § 1391(b) (providing that venue is proper where the defendant resides, where the defendant is subject to personal jurisdiction, or where a substantial part of events occurred). As Defendants reside in Nevada, (Am. Compl. ¶¶ 27–29), it is clear that venue is proper and jurisdiction may be exercised in the District of Nevada, which is "a district . . . in which [the Action] could have been brought." *Perrone*, 2020 WL 2538464, at *7 (quoting 28 U.S.C. § 1406(a)). Finally, because this Action "does not 'unquestionably lack merit, . . .[t]he Court finds that it is in the interest of justice to transfer, rather than dismiss, this [Action]." *P.C. v. Driscoll*, No. 24-CV-2496, 2025 WL 104522, at *10 (S.D.N.Y. Jan. 15, 2025).

### III.  Conclusion

For the reasons set forth above, the Motion is granted.  The Clerk of the Court is respectfully directed to transfer the Action to the District of Nevada pursuant to 28 U.S.C. § 1406.

SO ORDERED.

Dated:    September 24, 2025
          White Plains, New York

_____
KENNETH M. KARAS
United States District Judge